THE STATE OF MONTANA, Plaintiff and Respondent, v.
CHARLES ALLEN METCALF, Defendant and Appellant.
No. 11582.
Submitted May 14, 1969.
Decided July 21, 1969.
457 P.2d 453.

370

Francis J. McCarvel, argued, Kalispell, for appellant.

Robert L. Woodahl, Atty. Gen., John C. Weingartner, Asst. Atty. Gen., argued, Helena, H. James Oleson, County Atty., argued, Kalispell, for respondent.

: MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

Appeal from the district court of Flathead County following jury trial and entry of judgment sentencing defendant to a term of 10 years in the state prison. Defendant was charged

with the crime of forcible rape of an adult female, not his wife, and on his appeal contends that the district court erred upon the trial and in denying certain motions made by defendant. Defendant made no statements nor did he take the stand in his own defense.

The essential facts disclosed by the evidence indicate that on the evening of January 17, 1968 prosecutrix left her home at approximately 8:45 p.m., driving a 1960 Volkswagen, and went to a Kalispell bowling alley. After completing league bowling at approximately 12:15 a.m. January 18, prosecutrix left the bowling alley, walked to her car, and entered on the driver's side. While attempting to start the car, she was accosted by a strange man, later identified as the defendant. Prosecutrix testified the defendant grabbed her by the throat, making it almost impossible to breathe, and literally picked her up and placed her in the passenger seat of the car. She immediately felt her life was in danger, and decided it would be best to cooperate. Defendant told her that he would let her go if she did exactly as she was told.

After a brief struggle, defendant released his grip on her throat and ordered prosecutrix to put her head between her legs. With defendant applying pressure to the back of her head with one hand, he started the Volkswagen, drove away from the bowling alley, and eventually headed west on U. S. Highway 2, toward Libby. During the journey defendant told prosecutrix "* * * to do as I was told, not to look up, because he would hate to beat me up or rough me up in any way."

Some distance from Kalispell, defendant turned off the main highway and drove on a gravel road where he subsequently stopped the car and shut off the motor. After a short time, defendant ordered the prosecutrix into the back seat of the car where he disrobed her. Prosecutrix testified that while she did nothing to resist physically, she was continually in fear of her life. After defendant was partially undressed, the act of forcible rape was committed, without the consent of the prosecutrix.

After the act, prosecutrix testified she was afraid that defendant might make good an earlier threat and kill her. She attempted to "pacify" him with conversation. Later defendant drove the car back to Kalispell where he parked it in front of the bowling alley. There defendant ordered the prosecutrix out of her car and into his, a Cadillac convertible parked nearby. Within a few minutes, Kalispell police arrived at the scene. Testimony indicates that defendant had aroused the suspicions of one of the officers earlier in the evening, consequently they had been keeping an eye on the defendant's car, waiting for his return. For this reason the police approached defendant's car at this particular time.

While asking defendant for identification the officer noticed that prosecutrix was crying. She was asked if there was anything wrong, to which she answered in the affirmative. As she was helped from defendant's car, she was in a near-hysterical state and said she had been raped. The officers arrested defendant and took them both to the police station.

Prosecutrix early in the morning of January 18th was examined by a doctor whose speciality was obstetrics and gynecology. He testified that when he first observed prosecutrix she was under considerable emotional strain, her eyes were swollen, she had been crying and her hair was messed up. The doctor made an examination of the prosecutrix's neck and her pelvic area. In the pelvic region there were no signs of trauma or bleeding and no sperm was found on microscopic examination, but a foreign piece of material was found in the vagina which the doctor sealed in a slide and marked for identification. Further, the doctor explained how intercourse could have been had without deposit of sperm. There were some contusions on her neck, indicating pressure marks or marks of force. From his examination of the patient and from a medical point of view the doctor stated he was satisfied that prosecutrix had been raped on that night. After the examination prosecutrix

gave police officers a statement and was subsequently taken to the Flathead county jail where she identified defendant.

All of the clothing that defendant and prosecutrix were wearing at the time of his arrest were sent to the F.B.I. laboratory. Analysis revealed that particles of the prosecutrix's clothing were found on defendant's clothing, and the foreign matter found in her vaginal vault was a fiber identical to the fibers on defendant's sport coat.

Defendant, on advice of counsel, at no time made a statement to any officer, nor did he testify in his own behalf at the trial. The jury returned a verdict of guilty, and this appeal followed.

In addition to the issue of whether the verdict was contrary to the law and the evidence, the defendant contends the district court erred in the following particulars:

(1) In giving instruction No. 23, and not giving defendant's proposed instruction No. 10;

(2) In allowing testimony as to defendant's action two nights prior to the commission of the crime;

(3) In not allowing testimony as to the demeanor of the prosecutrix at the time her deposition was taken, and

(4) In denying the following defense motions: (a) to dismiss at the close of the State's case in chief; (b) for a directed verdict at the close of all testimony, and (c) for a new trial.

Defendant alleges prejudicial error in the giving of instruction No. 23 on the ground the instruction amounted to an intimation to the jury that the impact of their verdict could be lessened by the court's imposition of a light sentence. Instruction No. 23 as given by the court, was as follows:

"Under the laws of Montana, as applied to this case, a person guilty of rape is punishable by imprisonment in the Montana State Prison for a term which must not be less than two years nor more than ninety-nine years, but may be for any specified term there-between. Further, the Court has the discretion of releasing the defendant on probation, deferring the imposition of sentence for a period not to exceed three years, suspend the

execution of the sentence up to the maximum sntence allowed for the particular offense or impose any combination thereof.

"In the event you return a verdict of guilty of the crime of rape, the Judge must assess and declare the punishment.

"In the event you return a verdict of not guilty, the defendant must be released and discharged."

Defendant argues this instruction prejudiced his right to an acquittal for the reason that those members of the jury who were disposed to vote him innocent could more easily be persuaded to change their position, knowing that a suspended or otherwise minimal sentence would result. With this contention we cannot agree.

Instructions are given to advise the jury on the applicable law. Here, the court informed the jury of the possible punishment defendant might receive if he were found guilty and the discharge he would be entitled to if he were found innocent. In reviewing this instruction, it is found to be almost a verbatim statement of the law, (sections 94-4104; 95-2202, 95-2206, R.C. M.1947), and therefore there can be no argument that this instruction incorrectly stated the law in Montana. Nor can it be said the jury was misled by such an instruction.

When taken in conjunction with instruction No. 23, which instructed the jury on their sole duty—to find the defendant guilty or not guilty—the obligation of consideration of penalty was expressly reserved to the judge. This cannot be said to be improper.

Defendant also contends that in view of the fact the State notified defendant and his attorney of the intention to seek increased punishment as a prior convicted felon under section 94-4713, R.C.M.1947, he was further prejudiced by the giving of instruction No. 23. This contention is wholly without merit. The State, pursuant to the provisions of section 95-1506, R.C.M.1947, properly gave notice of the intention to seek increased punishment. Under the provisions of section 95-1506(b), R.C.M.1947, the notice and the charge of prior conviction

"* * * shall not be made public nor in any manner be made known to the jury before the jury's verdict is returned * * *." A careful review of the evidence in this case shows that the provisions of this section, as well as the provisions of section 94-4713, R.C.M.1947, were complied with. The jury was not in possession of the information relating to defendant's prior conviction, and could not have been prejudiced thereby.

Further, defendant contends the district court erred by refusing to give defendant's proposed instruction No. 10 as a statement of the law as enunciated by this Court in the case of State v. Needy, 43 Mont. 442, 117 P. 102. We agree that the instruction in question states the law applicable to the facts as set out in the Neddy case, supra. However, we cannot agree that it states the correct application of the law under the facts now before the Court.

Defendant's proposed instruction No. 10 read as follows:

"You are instructed that while the prosecutrix may not have given ready consent to the act of intercourse, if she did not offer any physical resistance which required force to overcome, within the meaning of the statute, then there was no rape."

The law applicable to this case, properly set out in the information and in court's instruction No. 2, is set out in section 94-4101, R.C.M.1947, as follows:

"Rape is an act of sexual intercourse, accomplished with a female, not the wife of the perpetrator, *under any of the following circumstances*

\* \* \*. \* \* \* \* \*

"(3) Where she resists, but her resistance is overcome by violence or force.

"(4) *Where she is prevented from resisting by threats of immediate and great bodily harm, accompanied by apparent power of execution,* or by any intoxicating narcotic, or other anesthetic substance, administered by or with the privity of the accused.\* \* \* " (Emphasis added.)

The Needy case, supra, dealt totally with subsection (3),

supra, to the exclusion of subsection (4), while the instant case is grounded principally on subsection (4), above quoted.

It is not essential that physical resistance be offered by the prosecutrix, although in this case she did offer some. Subsection (4) simply requires that there be threats of immediate and great bodily harm, accompanied by apparent power of execution. The transcript shows an over-abundance of such threats, along with defendant's apparent ability to carry out his threats. Such ability is evidenced by defendant's physical size and the bruises administered to the prosecutrix during the initial attack.

There can be no question that defendant has the right to have instructions given which state or explain the law applicable to his case. The defendant does not, however, have the right to an instruction which, to the exclusion of some elements of a crime, would mislead the jury to believe that constant physical resistance which required force to overcome was an essential element. That is not the law as evidenced by subsection (4) of section 94-4101, supra. In view of the fact that a proper instruction was given, court's instruction No. 2 which explained the law applicable to this case, it was not error to refuse defendant's proposed instruction No. 10.

Next, defendant alleges it was error to allow testimony of a police officer as to defendant's action two nights prior to the commission of the crime charged. The statement made by the officer had no bearing on the basic issues involved in the trial of this case, but rather went to establish a basis upon which the officer was later able to identify the defendant on the evening of the crime. Nowhere has defendant shown that this was prejudicial. It seems idle to discuss this contention when defendant was arrested in company of the prosecutrix and she that same morning formally identified him.

However, prejudice in a criminal case will not be presumed but rather must appear from a denial or invasion of a substantial right from which the law imputes prejudice, State

v. Schleining, 146 Mont. 1, 403 P.2d 625, and also, the defendant must demonstrate prejudice from the record. This defendant has failed to do.

Section 95-2425, R.C.M.1947, states that any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded. As this Court said in State v. Gallagher, 151 Mont. 501, 506, 445 P.2d 45:

"If there was any error at all it was merely technical, and there is a long standing rule in this jurisdiction [based on the present section 95-2425, R.C.M.1947, and its predecessors] that technical errors or defects will not provide a basis for a reversal in a criminal prosecution. Cf. State v. Schleining, 146 Mont. 1, 15, 403 P.2d 625 (1965); State v. Cates, 97 Mont. 173, 198, 33 P.2d 578 (1934)."

On the basis of the entire record, it is apparent the evidence presented by the police officer, over the objection of defendant, was of little importance. What the officer stated was that a couple of days before he had observed this Cadillac car with Washington plates on it drive up over the curb at a certain location. He and another officer noted the car with defendant and prosecutrix in it on January 18th and he was one of the arresting officers. This statement by the officer in explanation of how he happened to investigate this particular car certainly cannot be said to affect the substantial rights of defendant.

Going on to defendant's next allegation of error—not allowing testimony as to the demeanor of the prosecutrix at the time her deposition was taken—it is incomprehensible to this Court how such testimony could be relevant to the issues as they were when before the trial court. Conceding that the prosecutrix became emotional and hysterical during the course of the trial, her demeanor at the taking of her deposition can in no way be used to impeach her demeanor at the time of the trial.

Defendant contends that at the time of the taking of her deposition, prosecutrix was "* * * calm, very cool about the situation." This was 32 days after the crime, and was in the

presence of the court reporter, county attorney, and defendant's attorney. The atmosphere was obviously different than it would be at trial. There can be no question of the relevance of her demeanor immediately following the crime, and to this point there was sufficient evidence presented; nor can there be any qustion of the relevance of prosecutrix's demeanor at the trial. That is a matter of record.

In view of our holding concerning the applicable law in cases of forcible rape defendant's contention that the verdict was contrary to the law and evidence is without merit.

This leads us to defendant's last allegation of error, the refusal of the district court to grant (a) a dismissal at the close of the State's case in chief; (b) a directed verdict at the close of all testimony, and (c) a new trial. It is our opinion that the district court was correct in each of its rulings.

We have considered defendant's contentions and find them totally without merit in light of the evidence presented to the district court. It has long been the law in this state that a rape conviction may be sustained by the uncorroborated testimony of the prosecutrix. State v. Moe, 68 Mont. 552, 219 P. 830. Further, as was said by this Court speaking through Justice Haswell as recently as July 8, 1969, in State v. Bouldin, 153 Mont. 276, 456 P.2d 830:

"'* * * this Court has frequently observed that disputed questions of fact and the credibility of witnesses will not be considered on appeal but that determination of such matters is within the province of the jury. As long as there is substantial evidence to support the verdict it will not be disturbed on appeal. (Citing cases.) Here, the testimony of the prosecutrix and the surrounding circumstances constitute substantial evidence to support the conviction."

The State established a *prima facie* case. Once a *prima facie* case is presented, the burden of coming forward with evidence shifts to the defense. A review of the entire record in this case indicates that the defendant did not satisfy that requirement;

therefore, the denial of defendant's motion for dismissal at the end of the State's case in chief was proper.

In this jurisdiction a directed verdict in a criminal case is given only where the State fails to prove its case and there is no evidence upon which a jury could base its verdict. State v. Yoss, 146 Mont. 508, 409 P.2d 452; State v. Willicombe, 130 Mont. 325, 301 P.2d 1116; State v. Welch, 22 Mont. 92, 55 P. 927. For the same reason that dismissal in the instant case was refused, a fortiori, the district court's refusal to grant a directed verdict at the close of all the testimony was also proper.

There was nothing in defendant's motion for a new trial which would have justified setting aside the verdict and the new trial was properly refused. State v. Peschon, 131 Mont. 330, 310 P.2d 591.

For the foregoing reasons, the judgment of the district court is affirmed.

MR. JUSTICES CASTLES, JOHN C. HARRISON and HASWELL, concur.