The STATE OF MONTANA, Plaintiff and Respondent, v.
JOHN ALAN ZUIDEMA, Defendant and Appellant.

No. 11951.
Submitted May 10, 1971.
Decided June 8, 1971.
485 P.2d 952.

John M. McCarvel, argued, Great Falls, for defendant and appellant.

Robert L. Woodahl, Atty. Gen., Helena, J. C. Weingartner, Asst. Atty. Gen., argued, Helena, David H. Nelson, County Atty., Conrad, for plaintiff and respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from the District Court of the Ninth Judicial District, County of Pondera, from a conviction of the crime of assisting a prisoner in an attempt to escape from the county jail. A jury trial was had and defendant appeals from the judgment.

On December 20, 1969 there were four prisoners confined in the Pondera County jail. Steven M. Jackson was serving a 30 day sentence with but a day and one half of that sentence left to serve. Larry Hall, Richard Gong and Ed Pound were the other inmates. About 1:00 a.m. on Sunday morning, December 21, Deputy Sheriff Sangrey received a call from a radio operator at the sheriff's office that there was considerable noise in the jail. Deputy Sangrey went immediately to the jail where

he found considerable damage had been done to the inside of the jail, window bars had been sawed and removed, various pipes and a railing had been sawed, and electrical wiring had been cut. He immediately contacted Sheriff Hammermeister and together they went to the jail and restored order. In their search of the jail they recovered 2 files, 5 hacksaws and a knife.

The officers then removed Jackson from the county jail and placed him in the city jail to serve the day and one half remaining of his sentence. During the following 24 hours Jackson gave the officers two statements. At the trial he testified that on the afternoon of December 20 he saw the defendant John Zuidema, appellant herein, at the jail window and Zuidema had talked with him, Jackson, and with Gong and Hall. He further testified that he heard Gong ask defendant to get him some hacksaw blades and defendant said "He would see what he could do." Later the same day, at about 8:30 p.m. he again saw defendant at the window talking with Gong and Pound. Shortly thereafter he saw the hacksaws, files, and knife in Gong's possession and saw. him place them under the cook stove. Jackson testified that Gong and Pound were the instigators of the jail break attempt and although he, Jackson, had cut a pipe, he did so because he was afraid of Gong and Pound.

Hall testified that he knew defendant and had talked to him at the jail window on the afternoon of December 20 about a car; he had heard Gong and Jackson ask defendant to get some hacksaw blades for them and also heard defendant say "I will see what I can do." Hall further testified that defendant returned to the jail later and sometime thereafter he saw Jackson with the hacksaw blades.

Gong testified he also had talked with defendant the afternoon of December 20 and that he had asked defendant to try to get him some hacksaw blades; that he had received the blades, knife and files, but refused to say who had given them to him.

Gong and Pound received sentences of five years in the state prison for their part in the attempted breakout.

Albert Melby, an acquaintance of defendant, testified at the

trial that on Saturday night December 20 and Sunday morning December 21 he and defendant were together until about 3 a.m.

Defendant, his mother, and a brother all testified defendant was at their ranch home near Valier, Montana, and that he had never left the ranch area during the time in question. All three testified that December 20 was defendant's birthday and he was celebrating his birthday at home and also celebrating his return from a term in the state prison. His mother testified defendant arrived home at about 5:30 p.m. December 20 and never left after that except to go out to the shop to work with his brother on a TV set. His brother, Howard, testified he and defendant were together the entire evening of December 20 and it would have been impossible for him to have been in town after dark when it was alleged defendant passed the blades, knife and files into the jail.

After 7 hours of deliberation the jury found defendant guilty and he was sentenced to four years in the state prison.

Appellant presents four issues on appeal alleging the court erred in: (1) denying defendant's motion to dismiss, (2) permitting the introduction of exhibits 1-8, (3) giving instruction No. 19, and, (4) permitting witness Gong to refuse to answer questions as to who gave him the instruments used in the escape attempt.

■ Appellant alleges it was error to charge him under the provisions of section 94-4207, R.C.M.1947, when he should have been charged, if at all, under section 94-4208, R.C.M.1947.

Section 94-4207, R.C.M.1947, provides:

"*Assisting prisoner to escape.* Every person who willfully assists any prisoner confined in any prison, or in the lawful custody of any officer or person, to escape, or in an attempt to escape from such prison or custody, is punishable as provided in the preceding section."

Section 94-4208, R.C.M.1947, provides:

"*Carrying into prison things useful to aid in an escape.* Every person who carries or sends into a prison anything useful in aiding a prisoner to make his escape, with intent

thereby to facilitate the escape of any prisoner confined therein, is punishable as provided in section 94-4206.''

The evidence presented to the jury tended to indicate appellant was guilty of passing certain instruments into the jail at the request of one or more of the inmates. Section 94-4207 provides that it is unlawful to ''assist'' any prisoner ''to escape, or in an attempt'' to escape. Section 94-4208 makes it unlawful to give a prisoner instruments that are ''useful in aiding a prisoner to make his escape.'' A careful reading of these statutes indicates that section 94-4207 concerns itself with an ''attempt'' while section 94-4208 directs itself to where there has been an actual ''escape.'' We find no error. The sentence for violation of either statute is the same.

Appellant next contends the state failed to prove the prisoners were lawfully in the county jail. Neither of the above quoted sections requires such a showing. See Petition of Parrett, 154 Mont. 257, 459 P.2d 268.

We find no merit in appellant's contention that he was convicted upon testimony of witnesses who were accomplices and such testimony was not corroborated. He relies upon section 94-7220, R.C.M.1947, which provides:

''Conviction on testimony of accomplice. A conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof.''

Appellant maintains all three of the inmates who testified assisted in the attempted escape therefore, he argues, all were accomplices under the provisions of section 94-7220. The question is: Were they accomplices?

In State v. Harmon, 135 Mont. 227, 236, 340 P.2d 128, 132, this Court defined what is an ''accomplice'':

''An accomplice is defined by Chief Justice Brantley as 'one who knowingly, voluntarily, and with common intent with the

principal offender unites in the commission of a crime. * * *
One may become an accomplice by being present and joining
in the criminal act, by aiding and abetting another in its com-
mission, or, not being present, by advising and encouraging its
commission; but knowledge and voluntary actions are essential
in order to impute guilt.'' (Citing cases.)''

Under our case law three elements must be present to con-
stitute one an accomplice, he must (1) knowingly, (2) volun-
tarily, and (3) with common intent—unite in the commission
of a crime. All three must be present to make one an ''accom-
plice''.

■ Here, in the case of Jackson, the court properly allowed
his testimony. He testified on both direct and cross examination
that he did not voluntarily act nor was it shown that he had any
common intent with the principals, Gong and Pound. The record
clearly shows he was serving the last two days of his 30 day
sentence; he had no reason to risk a more serious charge; and,
he participated due to fear of Gong and Pound.

■ As to Larry Hall, the record is void as to any show of
participation on his part in the attempted escape. He was not an
accomplice.

■ Issue 2 regards the introduction into evidence of certain
exhibits. Appellant argues that the court erred in allowing ex-
hibits 1-8. We find no merit in this issue for the argument of
appellant attacks the weight to be given the evidence rather than
its admissibility. All of the inmates involved identified the
exhibits, a deputy sheriff identified them, and another deputy
sheriff testified the evidence had been kept in the ''evidence
room of the court house'' prior to trial. In a similar situation
in State v. Wilroy, 150 Mont. 255, 259, 434 P.2d 138, 140, this
Court disposed of this question in the following manner:

''The lack of specific or positive identification marks is not of
great import for the items were not so uncommon that a reason-
able identification cannot be made. The lack of positive identi-
fication goes to the weight of the evidence rather than to its
admissibility * * *.''

■   In issue No. 3 appellant raises the giving of court's instruction No. 19 as error. That instruction reads as follows:

"Under the laws of Montana, as applied to this case, a person guilty of Assisting a Prisoner in an Attempt to Escape is punishable by imprisonment in the Montana State Prison for a term not exceeding ten years, and fine not exceeding ten thousand dollars. Further, the Court has the discretion of releasing the defendant on probation, deferring the imposition of sentence for a period not to exceed three years, suspending the execution of the sentence up to the maximum sentence allowed for the particular offense or imposing any combination thereof.

"In the event you return a verdict of guilty of the crime of Assisting a Prisoner in an Attempt to Escape, the Judge must assess and declare the punishment.

"In the event you return a verdict of not guilty, the defendant must be released and discharged."

This instruction is taken haec verba from a recent case of this Court. State v. Metcalf, 153 Mont. 369, 457 P.2d 453, and it is clear the trial court followed *Metcalf* in giving the instruction. Appellant argues that the instruction is prejudicial in that it intimates to the jury the impact of a jury verdict of guilty could be lessened by the court's imposition of a light sentence. He contends this prejudices him as to an acquittal for the reason that the jurors who might otherwise be disposed to find him innocent would be easily persuaded to change their position, knowing that a suspended or minimal sentence could be imposed. We are persuaded by this argument particularly in view of the adoption of the new criminal rules of procedure providing that the jury has nothing to do with the sentence. Under section 95-2206, R.C.M.1947, that duty is the sole responsibility of the trial judge. While in the *Metcalf* case, we found the giving of this instruction not to be prejudicial, we find it is prejudicial here. It should not have been given and should not be given in any future cases.

We note here that in all criminal prosecutions the jury under the new rules is told that punishment is not of its concern;

its sole function is to decide the defendant's guilt or innocence. By legislative action punishment has been given solely to the trial judge, leaving the function of finding facts and weighing them to the jury.

The serious factor causing us to change our position from that of *Metcalf* is that an instruction of this type allows irrelevant matters to be considered by the jury which may influence its decision aside from the standard of proof by the evidence beyond a reasonable doubt. We have held previously that in the giving of erroneous instructions it is not a ground for reversal where the instruction could not in any manner have prejudiced the accused. State v. Stevenson, 26 Mont. 332, 67 P. 1001; State v. Fuller, 34 Mont. 12, 85 P. 369. Here, instruction No. 19 is clearly prejudicial in that it placed an undue emphasis on one factor which the jury, whether or not it should do so, was bound to take into account. All other factors come to the jury as evidence, or of its own experience and knowledge. By instructing a jury on various possibilities of sentence, the court suggests that it should give weight to that possibility in reaching a verdict.

Here, there was alibi testimony to which the jury obviously gave considerable consideration for the jury deliberated some seven hours. Perhaps with the strong case made by the state, there is but slight prejudice, but where a prison sentence is involved every doubt should be resolved against the state and in favor of the defendant. For the above reason we are of the opinion that it was prejudicial error to give the instruction over the objection of defendant. 12 A.L.R.3d 836; People v. Morse, 60 Cal.2d 631, 36 Cal.Rptr. 201, 388 P.2d 33; State v. Todd (1970), Wash., 474 P.2d 542; Sukle v. People, 107 Colo. 269, 111 P.2d 233.

In his final issue on appeal appellant raises the question of error in allowing the witness Gong to refuse to answer the question as to who gave him the tools used in the escape attempt. We find no error for the record reveals no request by the appellant at the time of trial asking the trial court to direct wit-

ness Gong to reveal the identity of the person who passed the tools into the jail. Appellant cannot now put the trial court in error, having failed to make a record. Also, it is questionable appellant really wanted an answer from Gong, for the finger might well have pointed in his direction.

The judgment of the trial court is reversed and a new trial ordered.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES DALY, CASTLES, and HASWELL, concur.