No. 12180

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

PAUL MANNING,

Defendant and Appellant.

---

Appeal from: District Court of the Thirteenth Judicial District,
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

John L. Adams, Jr. argued, Billings, Montana.

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana.
David V. Gliko, Assistant Attorney General, argued,
Helena, Montana.
Harold F. Hanser, County Attorney, Billings, Montana.
G. Todd Baugh, Deputy County Attorney, argued, Billings,
Montana.

---

Submitted: April 20, 1972

Decided: JUL 2 8 1972

Filed: JUL 2 8 1972

Thomas J. Kearney
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal from a conviction of the crime of assault in the second degree following a trial before a jury in the district court of Yellowstone County. Defendant was sentenced to ten years in the Montana state prison following proof of a prior conviction.

From the record it appears that in the early morning hours of September 13, 1971, Rita Jensen, hereinafter referred to as Rita, was forcefully struck in the face by the defendant outside the Midway Club, a Billings night club. The blow, inflicted by defendant's fist, was of such impact as to produce a comminuted and depressed fracture of the zygomatic arch and a fracture of the coronoid process, which are component bones in the jawbone structure. The injury required Rita to be hospitalized and operated upon by an oral surgeon. Rita testified that the injury was so painful that she had to return to the hospital emergency room for several days to receive pain-suppressing injections. At trial, the oral surgeon also gave his opinion that such an injury would surely be painful. Rita was a student at Billings Business College and had to miss about three weeks of school because of the injury.

The circumstances leading to the injury began with the arrival of Rita and her escort, Gordon Sticka, at the Midway Club about 10:30 p.m. on the evening of September 12. She and her escort had some drinks and engaged in dancing from their time of arrival until the club closed about 2:00 a.m., September 13. Shortly prior to closing time, the defendant and the lady he was escorting arrived at the Midway Club for the purpose of dancing and having "a few drinks". Defendant's testimony states that he arrived about 1:00 or 1:30 a.m. Defendant, Paul Manning, says he was also drinking that evening before arriving at the Midway.

Although Manning and Rita were in separate parties that evening, they did on one occasion dance together. It was apparently customary for a

- 2 -

couple to "switch off every once in awhile" and dance with other partners. This one dance was the only contact Rita had with Manning until closing time at the Midway.

At this point, the testimony is in conflict regarding the immediate circumstances bringing about the injury, which occurred just following the closing of the Midway Club on the morning of September 13. Defendant said he was talking with Rita outside the club when Gordon Sticka suddenly started a fight with him. Manning testified that if he hit Rita, it must have been by accident due to her getting in the way of the alleged Sticka-Manning melee.

Rita and Gordon Sticka deny that there was any fight whatsoever between Sticka and Manning. Rita testified that while she was standing outside the club waiting for her escort to bring his car from where it was parked, Manning asked her to leave with him. She refused, turned away from Manning and moved toward the car which Gordon Sticka had now brought nearby. She did not hear Manning say anything else, but she does remember Manning's fist swinging toward her. Gordon Sticka testified that when Rita reached the car with Manning just behind her, Manning said: "Have you ever seen a woman hit?" At that point, defendant hit Rita.

On or about September 14, 1971, defendant was arrested on a charge of second degree assault.

At the close of the trial, defendant's attorney offered his instructions Nos. 11, 12 and 13 on third degree assault and the penalties for second and third degree assault. All these instructions were refused by the court. Alleging error in such ruling, defendant appeals.

The issue to be determined is whether, upon this record, the district court erred in refusing to instruct the jury on third degree assault.

Defendant's refused instruction No. 11 would have advised the jury that second degree assault is a felony and that third degree assault is a

misdemeanor and would have described the difference in penalty for each offense. Refused instruction No. 12 would have advised that defendant might be found guilty of any lesser included offense if the evidence was insufficient to establish the offense charged, and that the offense charged, second degree assault, " * * * necessarily includes the lesser offense of Assault in the Third Degree". Defendant's instruction No. 13, also refused, would have defined third degree assault for the jury.

Defendant was charged with and found guilty of violating section 94-602(3), R.C.M. 1947, which reads as follows:

> "Every person who, under circumstances not amounting to the offense specified in the last section: * * *

> "(3) Willfully or wrongfully wounds or inflicts grievous bodily harm upon another, either with or without a weapon * * *."

Section 94-603, R.C.M. 1947, essentially defines third degree assault as any assault or assault and battery not previously specified in the Code as a greater degree of assault. Like other degrees of assault, third degree assault requires unlawful intent on the part of the actor.

On the basis of the evidence it had to consider, there can be no question that the jury could find that the defendant "willfully" inflicted "grievous bodily harm" upon Rita Jensen. Two of the three witnesses testified that without provocation, Manning struck Rita with his closed fist. Her jaw was fractured, requiring hospitalization and oral surgery.

In refusing to give defendant's offered instructions, the court in effect ruled that, as a matter of law, there was no evidence to support a finding of third degree assault. The district court was correct in so limiting the jury's determination to second degree assault or no assault at all.

In reviewing the record we find that there was no evidence of third degree assault, with its requisite of criminal, unlawful intent, because the only other testimony regarding the cause of the injury, Manning's, was premised upon a theory of accidental striking. If the jury were to believe de-

- 4 -

fendant's theory of "accident", they would then have to acquit, since no element of criminal intent would then be involved.

This Court recently ruled in State v. Lewis, 157 Mont. 452, 457, 486 P.2d 863:

> " * * * Where the facts disclose, as in this case, that the evidence constituted at least second degree assault or no assault at all, the contention that the court erred in failing to give instructions on third degree assault is not meritorious." See also State v. Satterfield, 114 Mont. 122, 132 P.2d 372 and State v. Karri, 84 Mont. 130, 276 P.2d 427.

The district court was also correct in refusing to instruct on degrees of punishment. In State v. Zuidema, 157 Mont. 367, 373, 485 P.2d 952, we stated:

> "We note here that in all criminal prosecutions the jury under the new rules is told that punishment is not of its concern; its sole function is to decide the defendant's guilt or innocence. By legislative action punishment has been given solely to the trial judge, leaving the function of finding facts and weighing them to the jury."

Accordingly, the judgment is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Associate Justices

- 5 -