No. 81-350

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

NORMAN EYNAR HERRERA,

Defendant and Appellant.

Appeal from: District Court of the First Judicial District,
In and for the County of Lewis and Clark
Honorable Gordon Bennett, Judge presiding.

Counsel of Record:

For Appellant:

Skedd, Ashley, McCabe and Weingartner, Helena, Montana
J. Mayo Ashley argued, Helena, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Charles Graveley, County Attorney, Helena, Montana
Kevin Meek, Deputy County Attorney, argued, Helena, Montana

Submitted: February 22, 1982

Decided: April 15, 1982

Filed: APR 15 1982

Thomas J. Kearney
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Defendant appeals from his jury conviction in the Lewis and Clark County District Court, First Judicial District of two counts of kidnapping and two counts of assault. He was sentenced to ten years in Montana State Prison on each of the kidnapping charges with the sentences to run consecutively, and to six months in the Lewis and Clark County jail on each of the assault charges, those sentences to run concurrently with each other and with the prison sentences. For purposes of parole eligibility, he was designated a dangerous offender.

The codefendant, his natural father Charles Leo Dyll, was convicted of the same crimes and was sentenced to ten years, all of which was suspended on the condition that he commit himself to Fort Sheridan for alcohol treatment and remain a law abiding citizen.

The following issues are raised on appeal:

1. Did the State fail to prove an essential element of the crime of kidnapping?

2. Was defendant denied due process of law because the District Court allowed the victims to make an in-court identification when seven months had elapsed since they had made "hazy" descriptions of him, when there had been no pretrial lineup, and when their parents had pointed him out to them during a break in voir dire?

3. Was defendant's right to a fair trial violated by the District Court's refusal to instruct the jury that there is a mandatory two year prison sentence for every conviction of kidnapping?

4. Was Herrera denied equal protection by the disparity between his sentence and that of his codefendant?

5. Did the District Court err by designating Herrera a dangerous offender?

On the evening of September 5, 1980, in Lincoln, Montana, two girls (12 and 14 years old) were walking along Highway 200 on their way to get an ice cream cone. They heard a voice from the bushes call, "Come here, sweethearts," and as they attempted to run, a man grabbed them from behind.

While the man who grabbed the girls took them to Leo Dyll's house, Dyll assisted him by prodding them along with his cane. Once inside, the girls were ordered to sit down while the two men drank wine and at one point, were overheard discussing "having an orgy." When the girls refused to take their clothes off, Dyll told the other man to "go get the gun." He returned with a revolver and placed it on the couch between himself and Dyll. The girls were never actually threatened with the gun.

After an undetermined amount of time, one of the girls was able to distract the men by "shuffling her feet" while the other unlocked the door. They fled to the home of one of their grandparents on the other side of town. When their story was related to one girl's father, he went to Dyll's house, forced his way in with two pistols, and held Dyll and defendant Norman Herrera at gunpoint until police arrived and arrested the men. A search warrant was issued, but no gun was ever found.

Kidnapping. Defendant claims that the State did not prove the use or threatened use of physical force, and thereby failed to prove an essential element of the crime of kidnapping. Section 45-5-302, MCA. His argument fails for several reasons. The evidence definitely shows that the girls were held in a place of isolation, which is sufficient proof in itself. More importantly, the use of force was well established by the evidence. The girls were physically

dragged to Dyll's residence, and once inside, were forced into their chairs.

Furthermore, defendant's reliance on State v. LaMere (1980), ___ Mont. __, 621 P.2d 462, 37 St.Rep. 1936 is misplaced in this case. That case involved aggravated assault, which does require a showing of reasonable apprehension of serious bodily injury. No such showing is required to sustain a conviction of kidnapping. That conviction is not affected by the dismissal of aggravated assault charges or by any testimony by the girls that they were not afraid.

Identification. Defendant next argues that he was prejudiced by the identification procedure. His motion to prohibit the State's complaining witnesses from identifying him was denied on the first day of trial. During a break in the subsequent voir dire, the girls were waiting with their parents in a hallway when defendant was brought to the courtroom. He was then pointed out by one of the parents, thereby negating any possibility of in-court misidentification.

This is especially important because of the hazy nature of the girls' descriptions. Although problems with identification were recognized early, no request was ever made for a formal lineup. The State had planned to conduct a lineup at the trial, while the defense had considered seating defendant inconspicuously in the courtroom. Both girls knew Dyll by name and sight. Neither seems to have known the defendant, although there is some evidence that one of them may have previously seen him in Dyll's yard.

This Court applies a two-pronged test in these situations:

"First, was the identification procedure impermissibly suggestive; and, second, if so, did it under the totality of the circumstances have such a tendency to give rise to a sub-stantial likelihood of irreparable misidentification

-4-

that to allow the witness to make an in-court
identification would violate due process." State
v. Lara (1978), 179 Mont. 201, 205, 587 P.2d
930, 932.

Undoubtedly, the identification procedure here was
suggestive. Under the next step, we are guided by factors
set out in Neil v. Biggers (1972), 409 U.S. 188, 199-200, 93
S.Ct. 375, 382, 34 L.Ed.2d 401, 411, and quoted by this
Court in State v. Higley (1980), ___ Mont. ____, 621 P.2d
1043, 1049, 37 St.Rep. 1942, 1947:

> "We turn, then, to the central question, whether
> under the 'totality of the circumstances' the
> identification was reliable even though the
> confrontation procedure was suggestive. As
> indicated by our cases, the factors to be con-
> sidered in evaluating the likelihood of mis-
> identification include the opportunity of the
> witness to view the criminal at the time of the
> crime, the witness' degree of attention, the
> accuracy of the witness' prior description of
> the criminal, the level of certainty demonstrated
> by the witness at the confrontation, and the length
> of time between the crime and the confrontation."
> (Emphasis added.)

These factors still make for a very close call. Seven
months had elapsed, the descriptions were admittedly "hazy,"
and the certainty of the identification is clouded by the
parents' hallway remarks. Still, the first two factors we
think are the most important. The girls had more than
adequate opportunity to observe the defendant. Their view
was unrestricted, at close range, and for a considerable
period of time. As to the second factor, their degree of
attention was necessarily high. They were made to sit down
in a small room with two men who had just abducted them.
Even taking into consideration the ages of the girls, and
allowing for the prejudice caused by the hallway incident,
there was not a substantial likelihood of irreparable mis-
identification so as to constitute a denial of due process.
See also State v. Dahl (1980), ___ Mont. ___, 620 P.2d 361,

-5-

363, 364, 37 St.Rep. 1852, 1855.

Mandatory Minimum Sentence. The District Court refused defendant's offered instruction no. 22 which would have told the jury that "there is a mandatory two year sentence for each verdict of guilty of kidnapping which may not be suspended or deferred by the Court."

Under section 46-18-103, MCA, all sentences shall be imposed exclusively by the judge of the court. Because of that statute, we held in State v. Zuidema (1971), 157 Mont. 367, 373, 374, 485 P.2d 952, 955, that punishment is not the concern of the jury whose sole function is to determine guilt or innocence. Instructing the jury as to various possibilities of sentence, we said (157 Mont. at 374, 485 P.2d at 956), impermissibly suggests to a jury that it should give weight to the possible punishment in reaching a verdict. In State v. French (1975), 166 Mont. 196, 205, 531 P.2d 373, 378, we held a court was not required to instruct the jury, where mental disease or defect excluding responsibility was an issue, that a person acquitted by reason of mental disease must be committed to the state hospital. In State v. Coleman (1978), 177 Mont. 1, 33, 34, 579 P.2d 732, 751, we upheld an instruction that sentencing was vested in the court and the jury was not to consider the possible punishment defendant could receive upon a verdict of guilty. The District Court in this case avoided prejudicial error by refusing the offered instruction in this case.

Disparity. Defendant complains of the great disparity between the sentence he received and that received by his codefendant. Under section 46-18-101, MCA, ". . . persons convicted of a crime shall be dealt with in accordance with their individual characteristics, circumstances, needs, and

potentialities;. . ." Here, Dyll is a 58-year old alcoholic with a wooden leg and no record of violence. Defendant is a 28-year old with a history of involvement with weapons. There was no denial of equal protection.

Dangerous Offender Designation. The applicable statute is section 46-18-404, MCA:

> "46-18-404. Designation as nondangerous offender for purposes of parole eligibility. (1) The sentencing court shall designate an offender a nondangerous offender for purposes of eligibility for parole under part 2 of chapter 23 if:

> "(a) during the five years preceding the commission of the offense for which the offender is being sentenced, the offender was neither convicted of nor incarcerated for an offense committed in this state or any other jurisdiction for which a sentence to a term of imprisonment in excess of 1 year could have been imposed; and

> "(b) the court has determined, based on any presentence report and the evidence presented at the trial and the sentencing hearing, that the offender does not represent a substantial danger to other persons or society."

Here, defendant was told:

> "And the reason you're designated a dangerous offender is that's about the fourth gun incident you were in." Tr., Sentencing of Herrera, at 37.

A review of the record reveals a possible misapprehension of defendant's actual criminal background. Because of the apparent confusion as to the crimes involved, we are remanding this case for further hearing on the dangerous offender designation. See State v. Knapp (1977), 174 Mont. 373, 570 P.2d 1138.

First, there is no convincing evidence on record that this was defendant's "fourth gun incident." Secondly, and more importantly, the record does indicate that one of the prior convictions considered was constitutionally defective for defendant's lack of counsel. The sentencing court

cannot rely upon a previous criminal record in sentencing if that record contains constitutionally infirm convictions. Ryan v. Crist (1977), 172 Mont. 411, 413, 563 P.2d 1145, 1146; United States v. Tucker (1972), 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592.

Although a written presentence report may be deemed unnecessary under section 46-18-111, MCA, and a parole officer testified here at the sentencing hearing, we believe the most important consideration is defendant's right to have his sentence based upon substantially correct information. Knapp, supra. The designation may very well be unaffected by a reconsideration of defendant's record. However, where improper matters have been brought before the sentencing court (conviction without counsel), coupled with an apparent misunderstanding as to defendant's involvement with guns, defendant is entitled to a rehearing. Ryan, supra.

The judgment is affirmed. The cause is remanded for rehearing on the dangerous offender designation.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

-3-

Justices