William Jay GOLLEHON,
Petitioner–Appellant,

v.

Mike MAHONEY, Warden, Montana
State Prison, Respondent–
Appellee.

No. 05–99000.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 16, 2007.

Filed Oct. 25, 2007.

Michael Donahoe, Esq., Federal Defenders of Montana, Helena, MT, for Petitioner–Appellant.

Pamela P. Collins, Office of the Montana Attorney General, Helena, MT, for Respondent–Appellee.

Before: O'SCANNLAIN, HAWKINS, and WARDLAW, Circuit Judges.

MEMORANDUM *

William Gollehon ("Gollehon"), convicted in Montana state court in 1991 of deliberate homicide by accountability in the death of another prison inmate,[1] appeals the district court's denial of his petition for habeas corpus. We affirm in part, reverse in part, and remand for further proceedings.

I. Death–Qualification of Jury (Habeas Claim 1)

■ Gollehon argues that the Montana state court violated his rights under the Sixth and Fourteenth Amendments by permitting the prosecutor to "death qualify" the jury even though the jury, at that time, had no role in fixing the death penalty. However, the exclusion of conscientious jurors does not create a panel that lacks a fair cross-section or is improperly slanted in favor of conviction. *Lockhart v. McCree*, 476 U.S. 162, 174–84, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); *Buchanan v. Kentucky*, 483 U.S. 402, 415–20, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987); *see also Furman v. Wood*, 190 F.3d 1002, 1004–05 (9th Cir.1999) (on habeas, no deprivation of due process when a defendant who was not actually eligible for the death penalty was tried by a death-qualified jury).

Gollehon also argues he was deprived of due process because Montana failed to evenly apply its own law that the potential penalties should not be discussed with the jury. However, the state cases on which he relies did not involve capital defendants or questioning the venire about potential biases. *See State v. Herrera*, 197 Mont. 462, 643 P.2d 588 (1982); *State v. Brodniak*, 221 Mont. 212, 718 P.2d 322 (1986). Montana permits the dismissal of jurors for cause in a capital case if the jury has "any conscientious opinions concerning the punishment as would preclude finding the defendant guilty." Mont.Code Ann. § 46–16–115(2)(h). The Montana Supreme Court found that this more specific statute, rather than the general rule prohibiting discussion of the penalty, applied to voir dire in capital cases. *Gollehon*, 864 P.2d at 255–56. On habeas review, we cannot invalidate a state court construction of state law. *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005).

We affirm the district court's denial of the writ as to Claim 1.

II. Exhaustion of Fair Notice that Death Penalty Applies to Homicide by Accountability (Habeas Claim 7)

■ In Claim 7, Gollehon alleges that he was deprived of his Fourteenth Amendment due process rights because he lacked fair notice under Montana law that the death penalty was available for deliberate homicide by accountability. The district court ruled that this claim was unexhausted, concluding that Gollehon did not fairly present the federal question to the state court in his direct appeal. We disagree.

The exhaustion doctrine requires that the operative facts and the specific federal

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

1. *State v. Gollehon*, 262 Mont. 1, 864 P.2d 249 (1993).

constitutional guarantee entitling a petitioner to relief be fairly presented to the state courts prior to presentation in federal court, to give the state the opportunity to pass upon and correct alleged violations. *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995); *O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Citation to either a federal or state case involving the legal standard for a federal constitutional violation can be sufficient to establish exhaustion. *See Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir.2003) (en banc).

On direct appeal, Gollehon claimed that the trial court committed legal error by sentencing him to death for his conviction of deliberate homicide by accountability. Although Gollehon's argument partially involved the interpretation of state statutes, he also argued that, in interpreting the statute, Montana had to apply the rule of lenity in favor of the defendant, and he then included a lengthy quote from the United States Supreme Court. *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) ("First, a *fair warning* should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear ....") (emphasis added) (internal quotations omitted). Gollehon concluded that any failure by the Montana Supreme Court to give him the benefit of the rule of lenity "would be a denial of due process and equal protection under Art II, §§ 4 & 17 of the Montana Constitution and under Amendment 14 of the United States Constitution."

Although the rule of lenity is not in and of itself constitutional, it is inextricably intertwined with the concepts of fair notice and due process. As the Second Circuit has explained:

> The rule of lenity is a canon of statutory construction, not itself federal law.... The rule of lenity, however, is called into service to protect the constitutional right to fair warning: "Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal...." ....
>
> Fair notice, of course, *is* a right of federal constitutional dimension, grounded in the due process guarantee, established by the Supreme Court, and requiring that a criminal statute "give fair warning of the conduct that it makes a crime."

*Lurie v. Wittner*, 228 F.3d 113, 126 (2d Cir.2000) (citations omitted); *see also id.* at 122–23 & n. 4 (dismissing state's argument that invoking rule of lenity did not provide notice of federal claim, because rule protects fair warning and there is a due process aspect of fair warning).

Gollehon went even further than the petitioner in *Lurie* by mentioning the federal due process clause in the last sentence of his brief on this issue and suggesting that a failure to apply the rule of lenity would violate due process and equal protection. When coupled with Gollehon's preceding arguments about the rule of lenity, including the lengthy quote from Bass about the need for fair warning, we conclude he sufficiently presented the federal issue to the state court.[2] Because the district court did not reach the merits of this claim, we

---

2. In fact, although the Montana majority decision does not expressly address the fair notice issue, the issue was not lost on the dissent, which felt that the majority's analysis extend-

ed "the death penalty to a person and acts not within either the terms of the fair and clear import of the language used by the Montana legislature." 864 P.2d at 271.

remand to the district court for further briefing and a decision on the merits.

### III. Collateral Estoppel/Double Jeopardy (Habeas Claim 6)

Gollehon argues that because he was "acquitted" of the crime of deliberate homicide by the jury, Double Jeopardy and/or collateral estoppel precluded the sentencing judge from applying aggravating factors that required the commission of a deliberate homicide. The Montana Supreme Court disagreed, reaffirming its prior decisions that a defendant charged with a crime by accountability is not charged with a separate or different offense from the underlying crime, accountability being merely a conduit to determine responsibility for the underlying crime. *Gollehon*, 864 P.2d at 264–66 (quoting *Matter of B.D.C.*, 211 Mont. 216, 687 P.2d 655, 657 (1984)); *see also id.* at 262. Thus, the state court concluded that Gollehon had not been "acquitted" of the crime of deliberate homicide, but rather that he had been convicted of that same crime on an alternative theory. *Id.* at 266.

The conclusion that "deliberate homicide" and "deliberate homicide by accountability" are legally the same crime is a state court determination of state law that this court cannot disturb on habeas review. *See Bradshaw*, 546 U.S. at 76, 126 S.Ct. 602. Nor are we persuaded that the way the State charged the counts in this particular case should lead to a different result.[3] We affirm the district court's denial of this claim.

### IV. Brady Claim—Pretrial Agreement with Armstrong (Habeas Claim 3)

■ Gollehon argues that the government violated *Brady* by failing to reveal the existence of a pretrial agreement with eyewitness J.D. Armstrong, which could have been used to impeach Armstrong's testimony at Gollehon's trial. Gollehon exhausted this claim in his state habeas petition, but the district court denied Gollehon leave to amend to add this claim to his federal petition. Later, however, the district court also rejected the claim on the merits. Assuming without deciding that the district court erred by denying leave to amend, we affirm the district court's denial of the claim on the merits.

To establish a *Brady* violation, Gollehon must establish that the State possessed evidence favorable to the defense but failed to disclose such evidence, and that had the evidence been disclosed, there is a reasonable probability that the outcome would have been different. *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); *Kyles v. Whitley*, 514 U.S. 419, 433–34, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). The Montana Supreme Court concluded that Gollehon had not established the existence of any undisclosed pretrial agreement between the State and Armstrong in exchange for his testimony. *Gollehon v. State*, 296 Mont. 6, 986 P.2d 395, 399 (1999).

Even if we were to accept Gollehon's argument that Armstrong's October 1991 letter contradicts his prior testimony and establishes an additional promise beyond his safety—i.e., housing at the Powell County Jail—Gollehon cannot establish a reasonable probability that the outcome of the proceeding would have been different. *Strickler*, 527 U.S. at 281–82, 119 S.Ct. 1936. The jury already knew that Armstrong had, on numerous occasions in the

---

**3.** If anything, the way the State charged the case may have provided Gollehon even more protection than constitutionally required because it required unanimity as to the theory of guilt. *See Schad v. Arizona*, 501 U.S. 624, 645, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991).

past, either faked an injury or confessed to crimes he did not commit hoping to be transferred out of Montana State Prison ("MSP") to a hospital or less secure facility so that he could escape. The jury was also aware that Armstrong had come forward with his information only a week or so after being denied a transfer to a different, lower security unit at MSP. The jury already had substantial reasons to mistrust Armstrong's purported motivations in testifying, even without evidence of a promise that Armstrong would be placed at the county jail.

In addition, though clearly an important witness, Armstrong was not the sole eyewitness. His testimony about the killing was generally corroborated by eyewitness William Arnot, even if the two differed as to minor details. There was also significant evidence of motive for the killing, as well as some physical evidence found in Gollehon's cell. For these reasons, there is no reasonable probability of a different outcome if the jury had been told that Armstrong was promised housing in a particular facility, as opposed to the general promise of his safety. We affirm the district court's denial of Claim 3.

## V. Failure to Disclose Post-trial Benefits (Habeas Claims 11 and 12)

■ Gollehon also argues that he was denied due process and fair sentencing because the State failed to disclose the post-trial benefits that were granted to the eyewitnesses who testified at Gollehon's trial. The Montana Supreme Court found that although the State went to great lengths to assist the eyewitnesses following the trial, there was no evidence of any pretrial agreement with Armstrong or Arnot that either would receive post-trial benefits in exchange for testimony. 986 P.2d at 399–400. This factual finding is entitled to deference if it is "fairly sup-

ported by the record." *See Palmer v. Estelle*, 985 F.2d 456, 458–59 (9th Cir.1993) (quotations omitted).

The letters and deposition testimony presented by Gollehon to support his claims do not reveal any promises of post-trial benefits; in fact, many of the documents expressly deny the existence of any such agreement and indicate that neither witness even asked for such benefits. Nor is there any evidence that, in the absence of a formal agreement, the witnesses subjectively believed they would receive such benefits post-trial in return for their testimony.

If there was no agreement that the State would provide post-trial benefits to the witnesses, then there was no undisclosed incentive for the witnesses to fabricate stories at trial to curry favor with the State. Evidence of gratuitous benefits received by the eyewitnesses does not make it more likely that their testimony at trial was false and would thus not provide a basis for the sentencing court or appellate courts to have "lingering doubt" about the credibility of the witnesses or Gollehon's guilt. We affirm the district court's denial of the writ as to Claims 11 and 12.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.** Each party shall bear its own costs on appeal.